CONRADER et al. v. JUDSON GOVERNOR CO.

(District Court, W. D. New York. July 7, 1915.)

1. PATENTS ⬤⇒328—VALIDITY AND INFRINGEMENT—PUMP GOVERNOR.
    The Conrader patent, No. 664,468, for a pump governor, construed, and *held* not anticipated, valid, and infringed.

2. PATENTS ⬤⇒157—SUFFICIENCY OF DESCRIPTION.
    The description in a patent for a machine is sufficient, if it discloses the means for achieving the result intended in such a clear way as to enable those skilled in the art to understand it without difficulty, and a statement of the mechanical principles involved is not essential.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 282-291; Dec. Dig. ⬤⇒157.]

3. PATENTS ⬤⇒328—VALIDITY AND INFRINGEMENT—PUMP GOVERNOR.
    The Conrader patent, No. 687,449, for a pump governor, was not anticipated and discloses invention; also *held* infringed as to claims 1, 8, and 13. Claim 17, which relates to an automatic safety stop on the governor, as limited by the prior art, *held* not infringed.

4. PATENTS ⬤⇒328—INVENTION—VACUUM GOVERNOR.
    The Conrader patent, No. 810,109, for a governor for vacuum pumps, consisting of the adaptation of the pressure governor of a prior patent for use as a vacuum governor, *held* void for lack of invention.

5. PATENTS ⬤⇒328—VALIDITY AND INFRINGEMENT—RELIEF DEVICE FOR COMPRESSORS.
    The Conrader patent, No. 1,072,576, for an unloader device for compressors, which is attached to the mechanism of the governor to relieve excessive pressure, *held* not anticipated, valid, and infringed.

In Equity. Suit by Rudolph Conrader and the Jarecki Manufacturing Company against the Judson Governor Company. On final hearing. Decree for complainants in part.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Hugh C. Lord, of Erie, Pa., for complainants.
Davis & Dorsey, of Rochester, N. Y., for defendant.

HAZEL, District Judge. This action is concerned with the alleged infringements of four patents granted to Rudolph Conrader, namely, patents No. 664,468, dated December 25, 1900, No. 687,449, dated November 26, 1901, and No. 1,072,576, dated September 9, 1913, relating to pump governors or governors for compressors, and patent No. 810,109, dated January 16, 1906, relating to governors for vacuum pumps, in connection with ordinary steam engines. By the adaptation of a pump governor, as described in patent No. 664,468, to a steam engine or compressor, the regulation of the latter to an approximately constant speed under varying conditions of load and steam pressure is obtained.

[1] The prior art discloses various governors for controlling an engine working under variable load to enable it to perform its work at a constant rate of speed. Indeed, it was a very old expedient to regulate a compressor engine to a constant rate of speed by various speed attachments—for example, by a valve on the speed governor. The patentee claims, however, to have made a patentable improvement, in that he designed to control a steam driven pump or compressor, operating at the same time with the steam engine. In this connection the specification says:

> "The object of the invention is to provide a pumping engine with a governor which will increase or decrease the speed of the engine in accordance with its requirements and at the same time have the engine at all times under the control of the governor, so that if there is a tendency for the engine to stop the governor will be immediately so operated upon as to give the engine its full power, regardless of what the pressure against the engine may be."

The specification, omitting details describes a valve chamber located at the lower end of the device in which there is a throttling valve connected to a stem extending upwardly out of the chamber to a carrier which has a bearing, gears and shaft connecting centrifugal elements consisting of weights attached to a stem and constructed to separate and fly outward in their rotations, and at the same time push down the stem to the valve opening at the end of the structure to impart the predetermined speed of the governor. There are means for opposing the centrifugal by a centripetal force; such means consisting of a series of springs engaging a lever at the lower end and at the opposite end a step bearing on the stem. As the centrifugal element forces a downward movement of the stem, the outer end of the lever is raised and the series spring compressed to a point where the opposing forces of the spring establish an equilibrium in resistance. By the specified means the normal speed of the governor is maintained, and a substantially constant speed of the engine results under varying loads and steam pressure, except as to slight variations enabling the combined elements maintaining the speed to come into action as the steam pressure is admitted. There is a pressure cylinder having mounted therein a piston connected to a yoke, and having an opening at the lower end through which the pressure is received. The air pressure causes the springs to extend and the pis-

ton to move, thus changing the tension on the series springs or on the centripetal element, which in turn lowers the normal speed of the governor.

The claims in issue are the first, second, third, sixth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth, but at the hearing the inquiry was limited to the first, second, and third claims; it being stated that a finding of infringement as to those would include the others. Claim 1, which is broad, reads as follows:

"1. In a pump governor, the combination of a centrifugal element, a centripetal element arranged to act in opposition to said centrifugal element, and means actuated by the pumped fluid for varying the relative strength of one of the elements within the limits of the power exerted by the other element."

The second claim is limited to a structure in which pump fluid varies the strength of the centripetal element, while claim 3 specifies a spring, instead of a centripetal element. The defenses are: (1) That the claims are limited by the prior art; and (2) noninfringement.

The defendant's governor, I think, embodies the governor under consideration. The pressure device therein no doubt automatically changes the normal speed of the governor, which is of the centrifugal type, and has for its function the regulation of the speed of the governor within certain limits, to the end that the engine speed shall not exceed a certain rate. When the speed of the engine is increased or decreased, the centrifugal governor comes into action to regulate and control it. The defendant uses also an air pressure or regulating device in its apparatus, which acts upon the valve whenever the air pressure is excessive and operates to regulate and reduce the steam supply. The governor is provided with a valve, which is operated by the governing device and is caused to open or close to maintain proper speed or pressure. If it is true, as claimed, that the patentee was the first to invent such an adaptation as described in the patent, then the defendant has appropriated the claims which are the subject of this controversy, notwithstanding any improvements it may have made in its governor. The principal elements in its structure, as in complainants', act conjointly to vary the normal speed by the pressure device which is operated through levers and a sleeve arrangement, while the speed, at any point between 280 and 320 revolutions, was made adjustable by a screw, as shown by the experimental test made by the witness Osborne:

[2] No sufficient reason is assigned for imparting to the claims so narrow a construction as to exclude defendant's governor. They should in all fairness correspond to the extent of the invention, and, thus considered, are not thought to have been enlarged. It is true the specification does not use the term "normal speed of the governor"; but the object of the invention is to "provide a pumping engine with a governor which will increase or decrease the speed of the engine in accordance with its requirements and at the same time have the engine at all times under the control of the governor." Any such control, according to the evidence, could only be had by varying the normal speed, or varying either the centrifugal or centripetal cle-

ments. This was accomplished by compressing the series of springs so that the centrifugal element and the centripetal element would be balanced. Even though it were conceded that the specification does not completely describe the idea of changing the normal speed by means of the air pressure device, the patent is not invalidated, in view of the fact that it discloses the means for achieving the result in such a clear way that the skilled in the art would have no difficulty in understanding it; and a statement of the mechanical principles contributing to the change of speed was not required. Walker on Patents, § 175; Dixon-Woods Co. v. Pfeifer, 55 Fed. 390, 5 C. C. A. 148. It is settled law that:

"An inventor is entitled to all that his patent fairly covers, even though its complete capacity is not recited in the specifications and was unknown to the inventor prior to the patent issuing." Diamond Rubber Tire Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527.

The defendant, however, contends that the patentee was not the first to thus automatically vary the normal speed of the governor, and that therefore his patent should not be accorded a construction of such scope as to include the defendant's governor for regulating the speed of an engine. The patents to Gardner, No. 638,412, and to Clayton, No. 315,244, were relied upon to narrow the claims in controversy; it being contended that in such prior patents the normal speed was varied by the action of a pressure element. Upon this point Prof. Ernsberger, in describing the Clayton governor, substantially testified, among other things, that when the pneumatic controlling device came into operation a joint action resulted, controlling the valve; that the centrifugal element was not by any means thrown out of action on account of its connection with the valve stem. Hence he inferred that during the periods of operation the centrifugal mechanism would still act upon the valve, its action being modified by the pneumatic element; but such structure was nevertheless essentially different from the Conrader improvement, in that the counterbalancing force not only acted on the centripetal element, but also upon the valve, closing it and slowing down the engine. Complainants' witness Kiefer, who has operated the Gardner governor, swore that there was but one speed at which the centrifugal governor came into action; that there was no variation in the Gardner governor of the normal speed.

Indeed, the proofs are that in neither the Clayton nor Gardner constructions were the opposing forces (the centrifugal and centripetal elements) equalized at a varying speed, but at a maximum speed only, and that the governor in such devices was in fact practically eliminated as a factor, as it did not remain active during the time the pressure device performed its function, and, moreover, that the balancing function of the Clayton and Gardner governors was to close the valve, while in complainants' and defendant's devices the centrifugal force opened and closed the valve to control the speed. That the Conrader invention possessed advantages over the prior art appears from Kiefer's testimony showing that catching the compressor when unloaded at a lower speed than normal eliminated the

objectionable shocks and jars present in the operation of the Gardner governor, and that there was also a saving in steam and fuel.

It was, however, argued that the Conrader patent was not for the broad idea of changing the normal speed of the governor by the pressure element, but was merely for the "mode of changing the normal speed" by causing a reduction in the strength of the centripetal element when the pressure arises; but this view is superficial, and does not accord sufficient credit to the invention.

There was considerable testimony relating to the compressive and expansive action of springs 42 and 56 in defendant's governor in an attempt to show that it operated differently from complainants'; but it would serve no useful purpose to dwell upon it. Defendant also contended that, as the centrifugal element in its apparatus was out of action before the pressure element reached its limit of movement, infringement is avoided; but in view of the fact that there were means in defendant's governor for adjusting the centrifugal elements, so as to secure a constant control, infringement is not avoided simply because said means are not used at all times.

[3] In patent No. 687,449, the object of the patentee was to supply pumping engines of the type specified in his earlier patent with a stop device, to enable closing the governor valve and discontinuing the run of the compressor or engine, so as to avoid injury from defects in the driving belt, and to provide a lever mechanism for varying the strength of the spring. Claim 1 reads as follows:

"1. In a pump governor, the combination of a speed governor, comprising a centrifugal and centripetal element, a governor valve, a pressure device actuated by the pumped fluid, a lever mechanism connected with said pressure device, a counterpressure means connected with said lever mechanism in opposition to the pressure device, said lever mechanism being arranged to operate upon one of the elements of the speed governor and to present a varying arm to the counterpressure means and pressure device."

The evidence shows that by the adaptation of the lever mechanism, which acted on the centrifugal arm, the direct resistance of the spring of the earlier Conrader patent was improved, and a better air pressure resulted. In the defendant's governor there appears the combination of elements of the quoted claim, including the leverage system and means for securing a counterpressure, which, in defendant's structure, comprise a vertical spring located in the circular casing of the air device. The precise instrumentalities described in the Conrader specification are not employed by defendant, but the arrangement of the essential parts is such as to enable their co-operation to attain the same result as complainants' adaptation. It would be construing claims 1 and 8 too narrowly, in view of the earlier invention described in patent No. 664,468, to limit them to a lever mechanism with the varying arm connection between the pressure piston and the compressure springs.

Claim 13 refers to indirectly influencing the governor valve "by varying strength of one of the elements within the limits of power exerted by the other element," meaning thereby that such result follows from combined action of the pressure device and the centrifugal element. Claim 13 also includes means by which the pressure device

and the governor valve are caused to operate. The Conrader governor is not directly controlled by the pressure element, but such control manifestly results from the reduction of the strength of the centripetal springs, and although in defendant's structure the pressure device is operated somewhat differently, being directly connected with the valve, nevertheless, as complainants' device is capable of closing the valve by direct connection through rod *h'* with lever *G*, infringement of this claim is not avoided by defendant.

Claim 17 relates to an automatic safety stop on the governor in question and describes means for closing the valve regardless of the position of the speed governor or pressure device. Although the defendant's stop device, on its release by connecting instrumentalities, also closes the valve, regardless of the position of the speed governor or pressure device, I am nevertheless of the opinion that what is shown and described in the prior patent to Boos, No. 589,635, requires a limitation of the claim under consideration to the specified instrumentalities for achieving the result. Boos described a device which he used in connection with the centrifugal governor to shut the governor valve. In complainants' arrangement an idler pulley supported by the belt of the governor drive pulley is used to close the valve, and upon the release of the idler pulley the valve stem drops down, irrespective of the centrifugal mechanism, and the engine is stopped. The defendant's automatic safety stop, it must be conceded, performs the same function; the operation being secured by a spring which is inclosed in sleeve *36*. The details of operation need not be set forth, and I think it will suffice to state that the defendant's method is widely different from those described in the Conrader patents. The safety stop of Boos, in my opinion, could readily have been adapted to the centrifugal mechanism of the Conrader governor, and, had it been so applied, would have been readable on claim 17.

The complainants assert that Conrader was the first to apply the safety stop to the mechanism of a governor which had a pressure control element; but, assuming the correctness of this assertion, the defendant is not concluded from using a stop device which is essentially different in its mode of operation and in the details of its construction. A stop device at most is a mere addition to a governor which obviously could perform its functions without such addition. Hence claim 17 must be limited to the precise method of releasing the stop mechanism described in the specification, and with this limitation infringement is avoided by the defendant.

[4] In patent No. 810,109 is described the adaptation of a centrifugal governor and means for varying the normal speed to a vacuum governor to maintain uniform pressure. The question presented is whether it involved invention to change the pressure governor, so as to permit its use as a vacuum governor. I do not think it did. None of the claims in controversy distinguish the vacuum governor from the governor described in patent No. 664,468, and while there is some difference in the manner in which such governors are operated the vacuum governor is not thought patentably different. Prof. Ernsberger for the defendant testified that the compressor and vacuum

governors are in every substantial respect identical, both in operation and construction; and with this view I am in entire accord. A comparison of the pressure governor with the vacuum governor shows that both draw air from a region of lower pressure to a region of higher pressure; the only difference being that in one case the receiver is connected with the outlet valves of the pump and in the other with the inlet valves. The involved claims are 1 to 12, inclusive, with the exception of the sixth claim, and they all refer to the manner in which the pressure governor is operated; the distinguishing feature being a reference to means for controlling the pressure of the fluid to be pumped. As the latter adaptation does not, in my opinion, disclose a patentable novelty in view of the earlier patents to Conrader, the claims are thought to have been double patented, and are therefore invalid.

[5] Patent No. 1,072,576 refers specifically to an unloader device for compressors which is attached to the mechanism of the governor to relieve excessive pressure. The claims involved are the first to sixth, inclusive, and the twelfth, fourteenth, fifteenth, and sixteenth. Claim 4 is typical of the others, and reads as follows:

"4. In a controlling device for compressors, the combination of a valve controlling the flow of motive fluid, a centrifugal governor acting on the valve, a controlling motor acting on the valve, a relief device for the compressors, a relief motor for actuating the relief device, and means actuated by the controlling motor for controlling the relief motor."

The invention consists in the combination of a relief device with the pressure element of the centrifugal governor hereinbefore described, for the purpose of controlling the relief device by the pressure element. The specification says:

"It is desirable to unload the compressor, if the requirements are such that, even with the minimum speed of the compressor through the action of the pressure device, there is too great an amount of pumped fluid, and it is also desirable to have this controlled by one pressure device, so that its operation with proper relation to the action of the pressure device may be assured."

It was not a new expedient to use a relief device in connection with a pressure device, such construction being described in the Prellwitz and Cullingworth patents in evidence; but there is no disclosure of an unloader device in connection with the speed controlling instrumentality to perform the function of the patent in suit—that is, the prior art discloses no centrifugal governor in which the variation of the speed of the engine is the controlling feature. Hence, in my estimation, the Conrader adaptation of a speed-controlling mechanism in connection with a control motor or pressure device to control the relief mechanism on compressors of the type in question was new and novel.

It is contended that the mere inclusion of centrifugal mechanism in the patented governors did not involve invention; but as the centrifugal mechanism and the relief mechanism are so correlated as to produce practically simultaneous operation there was invention in the combination. Prof. Ernsberger disputed such co-operative relation; but I am persuaded by the testimony of Mr. Kiefer, under whose immediate charge governors of this type were operated, that it exists.

In the defendant's governor the parts are assembled somewhat differently, and the vent probably was not operated to cause a complete retardation of the unloading; but I am of the belief that its unloading apparatus, which operated to achieve the same result, was an infringement of complainants'. My conclusion is that the claims of patent No. 1,072,576 are valid, and that the prior art does not require a strict construction thereof. Other matters of detail, including experiments made by complainants with the defendant's governor with reference to the maximum and minimum governor speed at unloading, were argued at the hearing and in the briefs; but they are thought to require no special mention herein.

A decree may be entered adjudging patents Nos. 664,468, 687,449, and 1,072,576 valid, and the claims in issue, except claim 17 of patent No. 687,449, infringed by the defendant, and adjudging patent No. 810,109 invalid for lack of invention.

So ordered.