WILLIAMS PATENT CRUSHER & PULVERIZER CO. v. ST. LOUIS PULVERIZER CO. et al.

(Circuit Court, E. D. Missouri, E. D.   November 22, 1900.)

No. 4,073.

1. PATENTS—INVENTION—CONSTRUCTION OF CLAIMS.
  The fact that a patentee possibly did not appreciate every result of his invention, or failed to state its full scope in his specification, will not deprive him of the benefit of claims which are broad enough to cover it.

2. SAME—SUIT FOR INFRINGEMENT—EVIDENCE OF ANTICIPATION.
  Oral testimony of witnesses that an unpatented machine, which is not before them or in court for inspection, operates in the same way and produces the same results as the machine of a patent, based on their recollection or upon a model produced, without any explanation of how, when, or by whom it was made, or for what purpose, and only identified with the machine in question by a general statement that it represents the construction of such machine, is not sufficiently certain to establish anticipation.

3. SAME—BURDEN OF PROOF.
 A showing by a defendant that the owner of an unpatented machine, which is claimed to be an anticipation of the patented machine in suit, refused to permit it to be brought into court, and a disclosure of where it can be seen, do not relieve him of the burden of proving the anticipation by clear and certain evidence, or cast upon the complainant the duty of inspecting the machine and disproving anticipation. By an application to the court, its aid could be secured, either for the production of the machine, or to obtain a correct reproduction for use at the trial.

4. SAME—INFRINGEMENT—CRUSHING MACHINE.
 The Williams patent, No. 489,236, for a crushing and pulverizing machine, was not anticipated and is valid. Claims 1, 2, and 3 construed, and *held* infringed.

In Equity. Suit for infringement of a patent. On final hearing.

Bakewell & Cornwall, for complainant.

Geo. H. Knight and W. M. Kinsey, for defendants.

ADAMS, District Judge. This is an action charging the defendants with infringement of claims 1, 2, and 3 of letters patent of the United States No. 489,236, granted to Milton F. Williams, August 31, 1897, and now owned by the complainant, for a new and useful improvement in crushers and pulverizers. Claim 1 reads as follows:

"(1) The combination, with a shaft, of hammer supports strung thereon; said supports being formed with projections; the projections of one support being staggered, relative to the next adjacent support, so that the projections of every other support align; through-bolts which pass through said projections, and hammers on said through-bolts and between the projections, said hammers being in line with the body portion of the support for the next adjacent hammer,—substantially as described."

Claims 2 and 3 are substantially like claim 1; claim 2 adding the element of supports acting as spacers for each other, and claim 3 adding the element of arranging the hammers in rows disposed longitudinally to the shaft. The invention of these claims, when analyzed in the light of the specifications and drawings, consists, plainly speaking, of a mill into which may be fed refractory materials for the purpose of crushing and pulverizing the same. The mill is made up of a frame or casing open at the bottom, and provided with journals on each sidepiece at their upper edge, on which a shaft running transversely with the casing is adapted to rotate. Upon this shaft are strung several hammer supports with projections, in close juxtaposition to each other, through which are pivoted heavy, rectangular pieces of iron, called "hammers." When this shaft is rapidly rotated or revolved the pivoted hammers, by the operation of centrifugal force, take a position radial to the shaft. Within the casing are arranged a series of iron bars, running transversely across the casing, leaving slight spaces between them, forming a half circle in shape, with its concave side uppermost. Against this circular, cage-like surface the ends of the hammers, in their revolution, co-act, and crush the material fed into the machine at one end of it, letting out the pulverized dust between the iron bars into appropriate receptacles underneath. The hammer supports referred to in the three claims under consideration are shown in the drawings of the patent to be triangular in shape, and so strung upon the shaft as to make

the points of the triangle or the projections of the patent in alternate supports staggered, or arranged at 60° in relation to one another. The effect of this arrangement is that there are six rows of hammers disposed around the supports, operating, by the revolution of the shaft, upon the body to be crushed and pulverized; and, if the nest of triangular supports be large enough to occupy the entire length of the shaft within the casing, manifestly there would be six rows of hammers operating throughout the whole width of the casing at each revolution of the shaft. While the triangular shape of the supports is alone shown in the drawings, and mainly referred to in the specifications, the patentee does not limit himself to that shape. He says:

"I have shown these hammer supports as being triangular shaped, but it will be understood that they could as well have four or more corners, and arranged in the same way to support the hammers, in which event there would be eight or more rows of hammers disposed around the supports."

The particular arrangement of these hammer supports and hammers is what constitutes the patentable novelty of the claims in question. The new and useful result claimed for this arrangement is that the entire space across the machine upon which the substances to be crushed can be placed is covered by, and acted upon by the hammer blows of, every two adjacent rows of hammers. What one row of hammers leaves unacted upon by reason of the space between the hammers of that row would be immediately caught and acted upon by the next coming row, when the hammers, by reason of the staggering of the supports, would act upon the spaces left by the first row. The third row of hammers, being in strict alignment with the first row, would act on the spaces left by the second row, and the fourth row of hammers, being in strict alignment with the second row, would act on the spaces left by the third row; and all the hammers, taken together, when there are six rows, would act at each revolution of the shaft three times upon all the surfaces containing material to be crushed upon the cage or bars below. The patentable novelty of this combination is not disputed by the defendants. In fact, their counsel conform to rule 19 of this court, and state their defenses to be anticipation and noninfringement only.

Before taking up these defenses, it is proper to refer to a contention of the defendants' counsel to the effect that the specification of the patent contemplates the use of hammers with twisted ends only. Attention is called to that portion of the specification reading as follows:

"In order that the several rows of hammers will cover the entire striking area by themselves, as above described, I twist the ends as shown, when it will be seen that the angle of the twisted end is sufficient to cause it to travel in a path equal to or greater than twice the width of the hammer. In this manner said hammers cover the entire area, whereas if they were straight the combined width would cover but one-half of the area."

The patentee then goes on and specifies the great utility of twisting the ends of the hammer. If no consideration be taken of the divers claims of the patent, it would seem as if the patentee might not have fully realized that his arrangement of staggered hammer

supports, without twisting the ends of the hammers, would permit any two rows of hammers to so act as to cover with their striking ends the entire width of the space to be acted upon. This is more apparent from a consideration of the whole specification, in which this effect is nowhere referred to. On the contrary, the patentee says:

"From the above it will be seen that the hammers of one row are staggered with relation to the hammers of the adjacent row, whereby the hammers of each row have a striking area covering the entire length of the row, which is equal to the length of the shaft occupied by these supports."

Then follows the description showing how each row will cover the entire striking area, already quoted. From these excerpts it looks as if the patentee was mainly intent upon such an arrangement and equipment of the hammers as that each row would strike upon the entire striking area to be acted on. But, notwithstanding the possible want of full appreciation of the effect of his arrangement of parts, it is clear that the patentee described the mechanism which would produce the same effect by the co-action of two rows of hammers as that which he says is produced by twisting the ends of the hammers. And, when reference is made to the claims of the patent, it is found that the first three claims in no manner involve the employment of hammers with twisted ends, while the fourth claim calls for twisted ends as an element of the combination of that claim. The first three claims are broad ones, calling for any hammers so arranged in longitudinal rows around the shaft, upon supports which are staggered with relation to each other, that the projection of every alternate support aligns. The fourth claim contains a limitation as to the hammers, namely, that they shall have twisted ends. It thus appears that the application of the principle disclosed in the specifications and in the first three claims, broadly stated, produces the new and useful result which the patentee possibly thought could be best or alone produced by the additional element involved in the fourth claim. Does this possible want of appreciation of every result of the operation of his device deprive him of the benefits of the broad claims in question? I think not. To so hold practically nullifies the three claims in question, and deprives the patentee of the benefits of the broad discovery there claimed by him. This should not be done if any other reasonable construction can be given them. The patentee so described the construction of his machine as to clearly make any two adjacent rows of hammers, taken together in their operation, cover the entire area to be acted upon, and thus to perform the function which he says a single row equipped with hammers having twisted ends will perform. While I have said that possibly the patentee did not fully state the scope of his invention in his specification, I am confident that he nowhere discloses that it took the twisted ends of the hammers to produce the result which two rows of his hammers, taken together, produce. He says, "in order that the several rows [that is, each one of them] of hammers will cover the entire striking area by themselves," he twists the ends of the hammers. This is entirely consistent, or at any rate not inconsistent, with the full appreciation that any two rows, taken

together, would do it without twisting the ends of the hammers. The patentee having before described the arrangement of parts, by which any two adjacent rows of hammers would operate upon the entire striking area, in the part of the specification last quoted, seems to take up another problem, namely, how to so arrange his hammers that one row would cover the entire striking area. This, as already observed, is not at all inconsistent with the claims of the complainant's counsel that the patentee had theretofore exploited the method of covering the entire striking area without hammers with twisted ends, by the operation of two adjacent rows. The complainant in my opinion, is entitled to the construction as shown in claims 1, 2, and 3, notwithstanding the fact that the patentee did not, in his specification, describe fully and accurately all the beneficial effects of its operation.

It is said in Eames v. Andrews, 122 U. S. 40, 7 Sup. Ct. 1073, 30 L. Ed. 1064, quoting from the case of Andrews v. Cross, 19 Blatchf. 294, 8 Fed. 269, as follows:

"It may be that the inventor did not know what the scientific principle was, or that, knowing it, he omitted, from accident or design, to set it forth. That does not vitiate the patent. * * * An inventor may be ignorant of the scientific principle, or he may think he knows it, and yet be uncertain, or he may be confident as to what it is, and others may think differently. All this is immaterial, if by the specification the thing to be done is so set forth that it can be reproduced."

In the case of Potts & Co. v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275, the court says:

"Doubtless a patentee is entitled to every use of which his invention is susceptible, whether such use be known or unknown to him."

In the case of McCormick Harvesting Mach. Co. v. Aultman, Miller & Co., 16 C. C. A. 259, 69 Fed. 371, it is said:

"It is not material that Gorman [the inventor] did not describe in full all the beneficial functions to be performed by the parts of his own machine, if those functions are evident in the practical operation thereof, and are seen to contribute to the success of the device."

To the same effect, also, are the following cases: Tonduer v. Chambers (C. C.) 37 Fed. 333; Parsons v. Seelye, 40 C. C. A. 486, 100 Fed. 455.

The next question for consideration is whether the defendants have shown that complainant's invention was anticipated. They first rely, and most strongly, upon the Bull English patent of 1883. This patent, as shown in the provisional specification, relates to improvements in pulverizers. The patentee describes the machine of his invention as follows:

"It consists of a hollow cylinder with closed ends, within which are hung from an inclined shaft a series of rollers, which are caused to swing round and rotate with the shaft, and strike and rub upon the inner surface of the cylinder as the shaft revolves."

At the outset, it cannot escape observation that Bull's machine has no apparent physical resemblance to that of complainant's; and while it is claimed that the model in evidence, as well as the drawings of the patent, show the action of the rollers to be the same as

the action of complainant's hammers, it is noticed that Bull, in his specification or description, in no wise shows the staggered relation of the rows of hammers, or any effect of that arrangement. On the contrary, his claim is that, by arranging the shaft at an angle in the cylinder, he "causes the rollers, when swinging or revolving round in the cylinder, to give a most effective grinding motion between the rollers and the inner surface of the cylinder." After a careful consideration of the drawings of the Bull patent, as well as of the model of the device of the patent in evidence, I do not believe the Bull machine can so operate as that any two adjacent rows of rollers will so act as to cover in their effective operation the entire transverse area of the cylinder to be acted upon. At any rate, I am sure the patent discloses no purpose to accomplish that result by the co-acting operation of the elements of the patent. It looks, rather, to the grinding effect to be occasioned by a deflection from a horizontal line of the shaft of the mill on which the rollers are strung. I am unable to find in this any anticipation of complainant's invention.

The next alleged anticipation relied on by defendants' counsel in argument is an unpatented structure claimed to have been sold in March or April, 1895, by the defendant the Schoellhorn-Albrecht Machine Company to John Gaffney. In determining the character, function, and operative effect of this Gaffney machine, it is first necessary to ascertain from the evidence, if possible, exactly what it is, and what are its elements. For this purpose a consideration of the evidence is necessary. The first reference to it found in the record is in connection with the examination of William Gruendler, an expert machinist. Without any explanation of how the model was made, when it was made, by whom it was made, or whether it was a correct representation of anything, counsel for defendants abruptly offers in evidence a model, and has it marked "Defendants' Exhibit A." The witness then, upon being asked whether that model, if enlarged into a machine, would perform the same work as complainant's machine, answers that it would. John Gaffney is then examined by the defendants, and testifies that he purchased a machine for pulverizing shale of Schoellhorn-Albrecht Machine Company in 1895. He then gives a general description of the machine, and is asked to look at the model, defendants' Exhibit A, and states that it represents the machine which he so bought; barring what he calls the "immaterial difference" that the shaft of his purchase was round, instead of square, as in the model. On the assumption of identity of the model with the machine purchased by him, Gaffney is then questioned at length concerning the elements, function, and operation of a machine enlarged from the model. H. S. Albrecht is then examined, and is shown defendants' Exhibit A, and is asked the following question: "State whether or not it represents the construction of the cylinder that your company sold to Mr. Gaffney." He answers that it does, and proceeds to give his views concerning the construction and operation of the machine enlarged from the model, and particularly of the machine sold by his company to Gaffney. Evidence is found in the record that the Gaffney purchase is now in existence at St. Louis, Mo.; that defendants did not have it in their possession; and that

they could not secure the consent of the owner to produce it in court for inspection. The foregoing is a fair sample, if not substantially all the evidence in the record identifying the Gaffney purchase with the device of the complainant's patent; and this evidence was all objected to, at the time the testimony was taken, as incompetent to prove anticipation. The grounds of the objection were fully stated, in substance, as follows: That there was no evidence tending to show by whom or when the model was made, for what purpose it was made, or that it was an accurate representation of any subsisting thing. Defendants' attention was thus timely called to the claim now strenuously urged by complainant's counsel, that such evidence was entirely insufficient to defeat complainant's patent. In my opinion the complainant's position with respect to this evidence is well taken. A preliminary showing should have been made, authenticating the model thus abruptly offered in evidence as a correct representation of the machine in question, before it was at all competent as testimony; and, as to all the evidence bearing on the alleged anticipation of complainant's invention by the Gaffney purchase, it may be appropriately said that it lacks that degree of certainty which renders it of any probative value. Three witnesses testified about the elements of a device, their co-action, function, and operative effect, without having the device before them or in court for inspection. The novelty of a device often depends upon a careful and discriminating examination of small and apparently inconsequential differences in construction between it and the prior art; and to permit witnesses to institute comparisons in their own minds, and state the result of such comparisons in general terms, to the effect that the unseen and unproduced machine operates in the same way as the machine of the patent, that the admitted difference in the structure between a circular and rectangular cylinder about the shaft is of no importance, and that the unproduced machine accomplishes the same results as the machine of the patent, would, if tolerated as satisfactory evidence, open the door to mistake, fraud, and deception. The supreme court of the United States, in the Barbed-Wire Case, 143 U. S. 275, 12 Sup. Ct. 450, 36 L. Ed. 154, in considering the value of such evidence, observes as follows:

"We now have to deal with certain unpatented devices claimed to be complete anticipations of this patent, the existence and uses of which are proven only by oral testimony. In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect, aside from the temptation to actual perjury, the courts have not only imposed upon defendants the burden of proving such device, but have required that the proof shall be clear, satisfactory, and beyond reasonable doubt."

This same subject was considered by this court in the case of Kraatz v. Tieman (C. C.) 79 Fed. 322, where the same thought is expressed, and where the authorities on the subject are collated.

Governed by the foregoing wholesome and salutary rules, I am unable to find from the evidence that the Gaffney purchase is an anticipation of complainant's invention. Defendants undertook to explain why the Gaffney machine was not produced in court. That

explanation is substantially this: That by their disclosure of the location of the Gaffney machine an opportunity was afforded the complainant to verify their conclusions. In my opinion, this circumstance cannot affect the conclusion reached. The burden is on the defendants to prove that the Gaffney machine is an anticipation. They cannot relieve themselves of their burden by suggesting to the complainant that there is a machine in existence which relates to the general art of complainant's invention, and requiring it to prove the negative proposition involved. Again, it is said that the owner of the Gaffney machine declined to permit defendants to produce it for use at this trial. This circumstance is of no avail, as the defendants might, if they so desired, have secured the aid of the court, either for the production of the machine, or to secure a correct reproduction thereof for use at the trial. Having failed to take any such steps, they cannot excuse themselves from producing competent evidence because the owners refused to permit its production.

These considerations dispose of the anticipation claimed to be found in the machine sold to Gaffney. While counsel for defendants mainly relied upon the foregoing as anticipations, there are several other patents pleaded by them, which were not strenuously urged in argument as anticipations. Without the aid of any expert testimony concerning them, sufficient consideration has been given them to satisfy me that none involve the invention of the three claims of the patent in suit.

The issue of infringement is simple. The defendants' device is admittedly the same as that of the patent, provided the twisted ends of the hammers is not a limitation applicable to the first, second, and third claims now in question. It has already been seen in discussing the invention of the patent that these claims are not subject to that limitation. A decree will be entered in favor of the complainant. Counsel may prepare it for submission to the court.